# United States Court of Appeals for the Federal Circuit

---

**PERSONAL AUDIO, LLC,**
*Appellant*

v.

**ELECTRONIC FRONTIER FOUNDATION,**
*Appellee*

---

2016-1123

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2014-00070.

---

Decided: August 7, 2017

---

JEREMY SETH PITCOCK, The Pitcock Law Group, New York, NY, argued for appellant. Also represented by PAPOOL SUBHASH CHAUDHARI, Chaudhari Law, PLLC, Wylie, TX.

NICHOLAS A. BROWN, Greenberg Traurig LLP, San Francisco, CA, argued for appellee.

JAMES R. BARNEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, for amicus curiae Unified Patents Inc. Also represented by DAVID MROZ, PHILIP ANDREW RILEY; JONATHAN RUDOLPH

KOMINEK STROUD, KEVIN JAKEL, Unified Patents Inc., Washington, DC.

KEVIN J. CULLIGAN, Maynard, Cooper & Gale, PC, New York, NY, for amicus curiae Askeladden, L.L.C. Also represented by JOHN P. HANISH; BRIAN TIMOTHY BURGESS, Goodwin Procter LLP, Washington, DC.

---

Before NEWMAN, CLEVENGER, and O'MALLEY, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Personal Audio, LLC appeals the decision of the Patent Trial and Appeal Board (PTAB or "Board") in *inter partes* review (IPR) of United States Patent No. 8,112,504 ("the '504 Patent"). This IPR was instituted on petition of the Electronic Frontier Foundation ("EFF"), described as a non-profit organization that advocates in the public interest of consumers of digital technology. The PTAB held claims 31–35 of the '504 Patent unpatentable as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103, leading to this appeal.[1] On the merits of the appeal, we affirm the judgment of unpatentability.

## BACKGROUND

The '504 Patent, entitled "System for Disseminating Media Content Representing Episodes in a Serialized Sequence," is directed to a system and apparatus for storing and distributing episodic media files. Personal Audio describes the '504 Patent as directed to podcast technology. A podcast is a digital media file made availa-

---

[1] *Electronic Frontier Foundation v. Personal Audio, LLC*, No. IPR2014-00070, 2014 WL 8584938 (P.T.A.B. April 10, 2014) ("PTAB Op.").

ble through web syndication, in which new installments or "episodes" are automatically received by subscribers.

The '504 Patent claims an apparatus whose components receive and control playback of the episodes. Claim 31 was agreed to be representative:

31. Apparatus for disseminating a series of episodes represented by media files via the Internet as said episodes become available, said apparatus comprising:

one or more data storage servers,

one or more communication interfaces connected to the Internet for receiving requests received from remotely located client devices, and for responding to each given one of said requests by downloading a data file identified by a URL specified by said given one of said requests to the requesting client device,

one or more processors coupled to said one or more data storage servers and to said one or more communications interfaces for:

storing one or more media files representing each episode as said one or more media files become available, each of said one or more media files being stored at a storage location specified by a unique episode URL;

from time to time, as new episodes represented in said series of episodes become available, storing an updated version of a compilation file in one of said one or more data storage servers at a storage location identified by a predetermined URL, said

updated version of said compilation file containing attribute data describing currently available episodes in said series of episodes, said attribute data for each given one of said currently available episodes including displayable text describing said given one of said currently available episodes and one or more episode URLs specifying the storage locations of one or more corresponding media files representing said given one of said episodes; and

employing one of said one or more communication interfaces to:

(a) receive a request from a requesting client device for the updated version of said compilation file located at said predetermined URL;

(b) download said updated version of said compilation file to said requesting client device; and

(c) thereafter receive and respond to a request from said requesting client device for one or more media files identified by one or more corresponding episode URLs included in the attribute data contained in said updated version of said compilation files.

EFF requested *inter partes* review of claims 31–35, on the ground, first, that the claims are anticipated by Andrew S. Patrick et al., *CBC Radio on the Internet: An Experiment in Convergence*, 21 Can. J. of Commc'n 125 (1996), *available at* http://www.cjconline.ca/indexphp/journal/article/view/926/832 ("Patrick/CBC") (pagination *infra* is to online version). Patrick/CBC describes an experimental trial conducted in 1996 to determine if there was

demand for regular radio programming distributed as digital audio files over the Internet. In that trial "the Quirks & Quarks science magazine show was recorded each week, broken down into its component parts, and made available on the server." Patrick/CBC at 3. The components, or "segments," were described in accompanying text available as part of a menu. *Id.* at 7.

EFF also requested *inter partes* review on the ground that claims 31–35 were invalid for obviousness, in view of a thesis of Charles L. Compton entitled *Internet CNN NEWSROOM: The Design of a Digital Video News Magazine* (May 12, 1995) (B.S. and M.E. Thesis, Massachusetts Institute of Technology) ("Compton/CNN"). The thesis describes a searchable digital video library based on the CNN NEWSROOM program, wherein each fifteen-minute video program is broken into individual news stories or segments, then converted to digital video files presented in a Table of Contents along with a short text summary, and made available at a URL containing the date of the broadcast. *Id.* at 14. Compton/CNN states that the system can be used for "any other program for which users might want to be able to see past episodes (i.e., other news programs, sitcoms, soap operas . . .)." *Id.* at 29. Granting EFF's Petition, the PTAB instituted review on the grounds of anticipation in view of Patrick/CBC and obviousness in view of Compton/CNN.

The PTAB construed "episode" as "a program segment, represented by one or more media files, which is part of a series of related segments, e.g., a radio show or a newscast." PTAB Op. at *5. The PTAB construed "compilation file" as "a file that contains episode information." *Id.* at *6. Based on the constructions of these terms, the PTAB held that the challenged claims are anticipated by CBC/Patrick and obvious over CNN/Compton.

## I

## "Standing" of Electronic Frontier Foundation

We asked the parties to brief the question of whether EFF has standing to participate in this appeal, in view of the court's holding in *Consumer Watchdog v. Wisconsin Alumni Research Foundation*, 753 F.3d 1258 (Fed. Cir. 2014), that a PTAB petitioner that does not meet the Article III case-or-controversy requirement does not have standing to invoke judicial power, and thus does not have standing to appeal to this court from a PTAB decision on *inter partes* reexamination.   The court in *Consumer Watchdog* stated that "although Article III standing is not necessarily a requirement to appear before an administrative agency, once a party seeks review in a federal court, 'the constitutional requirement that it have standing kicks in.'"   *Id.* at 1261 (quoting *Sierra Club v. E.P.A.*, 292 F.3d 895, 899 (D.C. Cir. 2002)).   Thus the court held that Consumer Watchdog, a non-profit organization described as representing the public interest, did not have standing to appeal to the Federal Circuit from the PTAB decision that sustained the validity of the patent Consumer Watchdog had challenged.

35 U.S.C. § 141(c) provides the right of appeal to the Federal Circuit for "[a] party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board." *Consumer Watchdog* raises no question as to whether EFF has standing to appear in this court to defend the judgment of the PTAB, for EFF is not the appellant.   The Court explained in *ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989), in an appeal from the Arizona Supreme Court to the United States Supreme Court, that standing to appeal is measured for the party "seek[ing] entry to the federal courts for the first time in the lawsuit":

> Although respondents would not have had standing to commence suit in federal court based on the allegations in the complaint, they are not the party attempting to invoke the federal judicial power. Instead it is petitioners, the defendants in the

case and the losing parties below, who bring the case here and thus seek entry to the federal courts for the first time in the lawsuit. We determine that petitioners have standing to invoke the authority of a federal court and that this dispute now presents a justiciable case or controversy for resolution here.

*Id.* at 618. The following year, in *U.S. Department of Labor v. Triplett*, 494 U.S. 715, 732 (1990), Justice Marshall explained in concurrence that: "Because respondent has not invoked the authority of any federal court, then, federal standing principles are simply inapplicable to him."

Here, the party invoking judicial review is Personal Audio; it is apparent that Personal Audio, on cancellation of its patent claims by the PTAB, has experienced an alteration of "tangible legal rights . . . that is sufficiently 'distinct and palpable' to confer standing under Article III." *Virginia v. Hicks*, 539 U.S. 113, 121 (2003) (internal citations omitted). With Article III satisfied as to the appellant, EFF is not constitutionally excluded from appearing in court to defend the PTAB decision in its favor.

## II

### Claim Construction

Personal Audio argues that the PTAB misconstrued several claim terms and misapplied the references, erring in law and fact.

Claim construction is a matter of law, and determination of the meaning and scope of claim terms receives plenary review on appeal. If issues of claim construction require subsidiary factual findings based on evidence extrinsic to the patent prosecution record, such findings are reviewed for support by substantial evidence. *Mi-*

*crosoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015).

The PTAB is authorized to construe the claims in accordance with their broadest reasonable interpretation, *Cuozzo Speed Techs., LLC v. Lee,* 136 S. Ct. 2131, 2146 (2016), recognizing that the claims cannot be divorced from the specification and the prosecution history, as perceived by persons in the field of the invention. *Microsoft*, 789 F.3d at 1298.

### *"Episode"*

Before the PTAB, Personal Audio argued that "episode" should be construed as "a program, represented by one or more media files, that is part of a series." PTAB Op. at *4. Personal Audio also argued that "episodes" are "a complete thing of the same theme," and that a "series of episodes" would be "related to one another with a common theme." Record of Oral Hearing at 23. Citing the '504 Patent specification and the testimony of EFF's expert Dr. Schmandt, the PTAB construed "episode" as "a program segment, represented by one or more media files, which is part of a series of related segments, *e.g.*, a radio show or a newscast." PTAB Op. at *5.

Personal Audio now argues that the PTAB's construction of "episode" improperly excludes the temporal limitation that episodes in the series issue over time, as the claims require. Personal Audio states that the PTAB's construction, which encompasses subparts of a single program, i.e., "program segments," reads out other claim limitations referring to new episodes "becom[ing] available."

EFF responds that the PTAB's construction is consistent with the specification, pointing out that the specification describes an "episode" as a "program segment" and that the specification uses news stories as examples of "program segments."

We conclude that the PTAB's construction of "episode" is in accord with the specification, and is correct. The specification states that "[a] given program segment may represent an episode in a series." '504 Patent, col. 19, ll. 36–38. As used in the '504 Patent, "program segment" refers to a subpart of individually selectable content. For example, the specification teaches that a user can "easily move from program segment to program segment, skipping segments in a forward or reverse direction, or to jump to a particular segment." '504 Patent, col. 8, l. 65–col. 9, l. 2. The specification describes an embodiment in which a compilation file of "episodes" is composed of "four news subjects [world news, national news, local news, computer trade news]," each of which is composed of "structured program segments." '504 Patent, col. 30, ll. 18–28.

The PTAB also correctly held that the "temporal limitations" that Personal Audio states modify "episodes" do not restrict the application to episodes produced at different times. Claim 31 states that "from time to time, as new episodes represented in said series of episodes become available," an updated version of the compilation file may be created with "currently available episodes." The terms "become available" and "currently available" do not restrict or define the timing of the creation of the episodes, past or present; they refer only to the availability of episodes to clients. And these terms do not describe the production of episodes, but instead refer to the conditions under which an updated version of a compilation file is produced.

Personal Audio's assertion that episodes must issue over time is not a distinction from the cited references. The '504 specification explains that "episode segments" are "serialized program segments" that can be downloaded "at one time or separately when necessary to conserve space or to handle sequential presentations which evolve in real time." '504 Patent, col. 39, ll. 36–40. Sequential

presentation is an option, but not a requirement of episodes in a series.

We affirm the PTAB's construction of "episode" as "a program segment, represented by one or more media files, which is part of a series of related segments, e.g., a radio show or a newscast." Further, the PTAB's findings that both Compton/CNN and Patrick/CBC disclose "episodes" are supported by substantial evidence. Figure 1 of CNN/Compton illustrates news stories or "episodes," and the science news stories described in Patrick/CNN are correctly described as "episodes."

### *"Updated Version of a Compilation File"*

Personal Audio also disputes the PTAB's construction of "an updated version of a compilation file," in each of the challenged claims. The PTAB construed "compilation file" as "a file that contains episode information," and held that "updated version" did not require construction. PTAB Op. at *5–6. The PTAB found that the claims do not require an "updated version of a compilation file" to be created only by amending a previously existing compilation file, and applied this construction to hold that Compton/CNN and Patrick/CBC both disclose an "updated version of a compilation file."

Personal Audio argues that the "updated version of a compilation file must contain attribute data for 'currently available episodes in said series of episodes.'" Personal Audio Br. 25 (emphasis omitted). Personal Audio states that an updated version of a compilation file must be updated by dynamically distributing previously available and newly available episodes together, and that an "over-written" updated version that contains information about episodes issued on a single day does not meet the claim limitation.

Claim 31 of the '504 Patent includes the requirement:

> from time to time, as new episodes represented in said series of episodes become available, storing an updated version of a compilation file in one of said one or more data storage servers at a storage location identified by a predetermined URL, said updated version of said compilation file containing attribute data describing currently available episodes in said series of episodes, said attribute data for each given one of said currently available episodes . . . .

This provision describes the contents of the updated version of the compilation file as containing information about "currently available episodes." The '504 specification does not require the updated version of the compilation file to be created from a previously existing compilation file, and "currently available" does not require or imply a temporal limitation. The claims are directed to the content of the compilation file, not how the compilation file is created.

The PTAB found that Compton/CNN's disclosure of automatically generating and storing a new version of the "contents.html" file with the day's news stories is an "updated version of a compilation file." PTAB Op. at *9–10. The PTAB also found that Patrick/CBC's disclosure of making episodes of Quirks & Quarks available each week, along with accompanying text, satisfied the claim limitation. *Id.* at *13–14. We discern no error in the PTAB's determination that these references disclose an "updated version of a compilation file."

### *"Back-end Configuration"*

The '504 Patent claims require "one or more processors" coupled to "one or more data storage servers" and "one or more communications interfaces." The parties refer to these components as the "back-end configuration." The only depiction of this "back-end configuration" in the '504 Patent describes the claimed hardware components

as part of a single "host computer" with a single processor. Figure 1 of the '504 Patent depicts communications interfaces 125, 127, and 129 within host server 101.

The PTAB found that the "communications interface" in the '504 Patent is part of the host server computer. '504 Patent, col. 5, ll. 57–66; col. 6, l. 60–col. 7, l. 9. The PTAB credited the testimony of EFF's expert Dr. Schmandt that the hardware components related to this configuration would be "trivial to the person of ordinary skill in the art," and that disclosure of a host server "necessarily would have included processors and a communications interface." PTAB Op. at *11.

Personal Audio argues that the PTAB erred in holding that CNN/Compton disclosed the '504 Patent's "back-end configuration" of processors and servers. Personal Audio states that this claim limitation would only be taught if a reference shows two processors, because data storage servers necessarily include a processor. Personal Audio argues that the disclosure of a web server, without stating how the server is configured, does not teach this limitation.

EFF responds that Personal Audio's "two processors" argument excludes a preferred embodiment in the '504 Patent and moreover, that Compton/CNN discloses two processors. The PTAB found that the Compton/CNN reference discloses "one or more processors coupled to said one or more data storage servers and to said one or more communications interfaces," as recited in claim 31. Compton/CNN discloses the "NMIS Internet server" and the "encoding station," which is hardware performing a conversion function. Compton/CNN, Fig. 3. Because the encoding station in Compton/CNN is physically separate from the NMIS Internet server, it reasonably must contain a separate processor. We conclude that substantial evidence supports the PTAB's findings on this issue.

We have considered all of Personal Audio's arguments, and affirm the PTAB's conclusion that the challenged claims are anticipated by the Patrick/CBC reference, and alternatively that the claims are invalid as obvious in view of the Compton/CNN reference.

## CONCLUSION

The decision of the PTAB, holding claims 31–35 of the '504 Patent unpatentable, is affirmed.

**AFFIRMED**