Dissenting opinion filed by Circuit Judge Newman.
Wallach, Circuit Judge.
Appellant Knowles Electronics LLC ("Knowles") appeals the inter partes reexamination decision of the U.S. Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB") that affirmed an examiner's findings that (1)
*1372 claims 1-2, 5-6, 9, 11-12, 15-16, and 19 of U.S. Patent No. 8,018,049 ("the '049 patent") are unpatentable as anticipated; and (2) claims 21-23 and 25-26 of the '049 patent would have been obvious over various prior art references. Analog Devices, Inc. v. Knowles Elecs. LLC (Analog Devices I ), No. 2015-004989, 2015 WL 5144183, at *7, *9 (P.T.A.B. Aug. 28, 2015) ; see Analog Devices, Inc. v. Knowles Elecs. LLC (Analog Devices II ), No. 2015-004989, 2016 WL 675856, at *7 (P.T.A.B. Feb. 17, 2016) (denying request for rehearing).[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (2012).[2] We affirm.
BACKGROUND
I. The '049 Patent
The '049 patent, entitled "Silicon Condenser Microphone and Manufacturing Method," generally discloses a silicon condenser microphone apparatus, including a housing for shielding a transducer, used in certain types of hearing aids to protect the transducer from outside interferences. See '049 patent, Abstract; id. col. 1 ll. 17-19, 26-30, 46-51. The components of the microphone apparatus, i.e., "package," may specifically be processed "in panel form" that can be separated later into individual units. See id. col. 3 ll. 10-19. As a result, the invention purportedly improves over the prior art's "drawbacks associated with manufacturing these housings, such as lead time, cost, and tooling." Id. col. 1 ll. 39-41.
Independent claim 1 is representative of the apparatus claims and discloses:
A silicon condenser microphone package comprising:
a package housing formed by connecting a multi-layer substrate comprising at least one layer of conductive material and at least one layer of non-conductive material, to a cover comprising at least one layer of conductive material;
*1373 a cavity formed within the interior of the package housing;
an acoustic port formed in the package housing; and
a silicon condenser microphone die disposed within the cavity in communication with the acoustic port;
where the at least one layer of conductive material in the substrate is electrically connected to the at least one layer of conductive material in the cover to form a shield to protect the silicon condenser microphone die against electromagnetic interference.
Id. col. 12 ll. 16-31. Independent claim 21 is representative of the method claims and discloses:
A method of manufacturing a silicon condenser microphone package comprising:
providing a panel comprising a plurality of interconnected package substrates, where each of the plurality of package substrates comprises at least one layer of conductive material and at least one layer of non-conductive material;
attaching a plurality of silicon condenser microphone dice to the plurality of package substrates, one die to each package substrate;
attaching a plurality of package covers, each comprising at least one layer of conductive material, to the panel, one package cover to each of the package substrates, where attaching the plurality of package covers to the panel comprises electrically connecting the at least one layer of conductive material in the package cover to the at least one layer of conductive material in the corresponding package substrate to form a shield to protect the silicon condenser microphone die against electromagnetic interference; and
separating the panel into a plurality of individual silicon condenser microphone packages.
Id. col. 13 l. 34-col. 14 l. 18.
DISCUSSION
Knowles argues that the PTAB erred in two respects. First, Knowles argues that the PTAB improperly construed "package," including by failing to consider this court's construction of package for a related patent. See Appellant's Br. 58-73. Second, Knowles argues that the PTAB improperly relied on a new ground of rejection to sustain the Examiner's obviousness findings. See id. at 74-80. After stating the applicable standard of review and legal framework, we address these arguments in turn.[3]
I. Claim Construction
A. Standard of Review and Legal Standard
"We review the [PTAB]'s ultimate claim construction in a reexamination de novo." In re CSB-Sys. Int'l, Inc. , 832 F.3d 1335, 1340 (Fed. Cir. 2016) (citing, inter alia, Teva Pharm. USA, Inc. v. Sandoz, Inc. , --- U.S. ----, 135 S.Ct. 831, 840-41, --- L.Ed.2d ---- (2015) ). A patent's *1374 specification, together with its prosecution history,[4] constitutes intrinsic evidence to which the PTAB gives priority when it construes claims. See Microsoft Corp. v. Proxyconn, Inc. , 789 F.3d 1292, 1297-98 (Fed. Cir. 2015), overruled on other grounds by Aqua Prods., Inc. v. Matal , 872 F.3d 1290 (Fed. Cir. 2017) (en banc). We review the PTAB's assessment of intrinsic evidence de novo. See id . When the PTAB "look[s] beyond the patent's intrinsic evidence and ... consult[s] extrinsic evidence," Teva , 135 S.Ct. at 841, such as expert testimony, dictionaries, and treatises, those underlying findings amount to factual determinations that we review for "substantial evidence," Microsoft Corp. , 789 F.3d at 1297. Substantial evidence means "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB , 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (citations omitted). "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." Elbit Sys. of Am., LLC v. Thales Visionix, Inc. , 881 F.3d 1354, 1357 (Fed. Cir. 2018) (internal quotation marks, brackets, and citation omitted).
"During reexamination proceedings of unexpired patents ... the [PTAB] uses the 'broadest reasonable interpretation consistent with the specification' standard, or BRI." In re CSB-Sys. , 832 F.3d at 1340 (citation omitted); cf. Cuozzo , 136 S.Ct. at 2145 (acknowledging the PTAB's use of BRI during reexamination). "Accordingly, this court reviews the reasonableness of the [US]PTO's disputed claim term interpretations." In re Bigio , 381 F.3d 1320, 1324 (Fed. Cir. 2004) (internal quotation marks and citation omitted). However, "[e]ven under the [BRI], the [PTAB]'s construction cannot be divorced from the specification and the record evidence ... and must be consistent with the one that those skilled in the art [ ('PHOSITA') ] would reach." Microsoft Corp. , 789 F.3d at 1298 (internal quotation marks and citations omitted).
B. The PTAB Did Not Err in Its Claim Construction
On appeal, Knowles maintains that the PTAB has "failed to resolve critical claim construction disputes regarding the meaning of the term 'package.' "[5] Appellant's Br. 58; see id. at 58-62. Specifically, Knowles avers that we "should direct the [PTAB] to adopt the definition of 'package' in MEMS Technology and follow the analysis therein, construing 'package' to require a second-level connection with a mounting mechanism ."[6] Id. at 62 (emphasis *1375 added) (citing MEMS Tech. Berhad v. Int'l Trade Comm'n , 447 Fed.Appx. 142, 159 (Fed. Cir. 2011) ); see id. at 62-72.
The PTAB construed "package" as "a structure consisting of a semiconductor device, a first-level interconnect system, a wiring structure, a second-level interconnection platform, and an enclosure that protects the system and provides the mechanical platform for the sublevel." Analog Devices II , 2016 WL 675856, at *3 ; see id. ("[B]ased upon this definition, we construed the claim term 'package' as broad enough to encompass the transducer assembly ... of [a prior art reference] Halter[e]n."); Analog Devices I , 2015 WL 5144183, at *4 (citing the same definition of package in the Final Written Decision). This definition does not require any specific mounting mechanism or use of mounting in the second-level connection. The PTAB also specifically rejected Knowles's proffered claim construction that "a package is mechanically and electrically connected to a printed circuit board by either through-hole or surface mounting." Id. at *7 (internal quotation marks and citation omitted). We agree with the PTAB's construction of "package."
We begin with the words of the claims themselves. See Phillips , 415 F.3d at 1314-15. The claims of the '049 patent do not disclose any particular type of required second-level interconnection. See '049 patent col. 12 ll. 16-31 (claim 1), col. 13 l. 21-col. 14 l. 18 (claim 21). While dependent claim 15 contains additional limitations that "include an element" that could be used for mounting, such as "circuitry, ground planes, solder pads, ... capacitors[,] and through hole pads," id. col. 13 ll. 9-13, these limitations, by the doctrine of claim differentiation, cannot apply to limit independent claims 1 or 21, see Phillips , 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").
The '049 patent's specification similarly does not limit the invention to any particular type of second-level connection. See '049 patent col. 1 l. 1-col. 12 l. 13. The specification describes one embodiment in which microphone packages are not mounted via through-hole or surface mount but instead are "coupled" together without mention of a mounting mechanism. See id. col. 11 l. 62-col. 12 l. 7 (describing a package in which "conductive traces may be formed in the various layers of either the top or bottom portion thus allowing multiple microphones to be electrically coupled"); see also J.A. 2903 (explaining by Analog Devices' expert that through-hole and surface mounting "are merely two of many other ways for making [an] interconnection"). Knowles's proffered construction would improperly read this embodiment out of the patent. See Medrad, Inc. v. MRI Devices Corp. , 401 F.3d 1313, 1320 (Fed. Cir. 2005) ("A claim construction that does not encompass a disclosed embodiment is ... rarely, if ever, correct." (alteration in original) (internal quotation marks and citation omitted) ). Finally, the parties do not identify any disclosures in the prosecution history that would aid in the construction *1376 of the term. See generally Appellant's Br.; Intervenor's Br.
We have held that, in some circumstances, previous judicial interpretations of a disputed claim term may be relevant to the PTAB's later construction of that same disputed term. See Power Integrations, Inc. v. Lee , 797 F.3d 1318, 1327 (Fed. Cir. 2015). While "the [PTAB] is not generally bound by a previous judicial interpretation of a disputed claim term[, this] does not mean ... that it has no obligation to acknowledge that interpretation or to assess whether it is consistent with the [BRI] of the term." Id. at 1326 (footnote omitted). Here, contrary to Knowles's arguments, the PTAB considered a previous interpretation of the term and properly determined its claim construction was consistent with the term's BRI. In fact, the PTAB explained that it "adopt[ed] a claim construction nearly identical to the construction adopted by the Federal Circuit in MEMS Technology ." Analog Devices II , 2016 WL 675856, at *3 (citation omitted). While we note that there were different claims at issue in MEMS Technology , (i.e. the patent, in part, explicitly claimed a "surface mountable package"), the construction reviewed by our court in our affirmance of the U.S. International Trade Commission's anticipation and obviousness findings still did not require "package" to be limited to constructions with through-hole or surface mounting. See 447 Fed.Appx. at 159 ("[A PHOSITA] would know that a 'package' is a self-contained unit that has two levels of connection, to the device and to a circuit (or other system )" (emphasis added) (internal quotation marks and citation omitted) ). The addition of "or other system" used to evaluate the disputed claims in MEMS Technology comports with the construction of "package" with a broad "second-level connection" as adopted by the PTAB in this case.[7]
Finally, we turn to the extrinsic evidence. See Phillips , 415 F.3d at 1317-19. Knowles asks us to look to one particular piece of evidence that states that "[i ]n general , [integrated circuit] packages can be classified into two categories: 1) through-hole , and 2) surface mount ." Appellant's Br. 70 (first emphasis added) (quoting J.A. 750). The PTAB found the use of the phrase "in general" "permits for possible exceptions" because it describes integrated packages in a non-limiting fashion. Analog Devices I , 2015 WL 5144183, at *5. We find that the PTAB's interpretation of this piece of extrinsic evidence is reasonable. Knowles further asks the court to look to extrinsic evidence such as certain treatise references describing common categories for mounting in microphone apparatuses to form second-level connections as through the hole and surface mount components. See Appellant's Br. 69-72. This extrinsic evidence cannot overcome the intrinsic evidence. See Phillips , 415 F.3d at 1318-19.
II. New Ground of Rejection
A. Standard of Review and Legal Standard
"Whether the [PTAB] relied on a new ground of rejection is a legal question that we review de novo." In re Stepan Co. , 660 F.3d 1341, 1343 (Fed. Cir. 2011). "When considering whether the [PTAB] issued a new ground of rejection, the ultimate criterion of whether a rejection *1377 is considered new in a decision by the [PTAB] is whether applicants have had fair opportunity to react to the thrust of the rejection." In re Biedermann , 733 F.3d 329, 337 (Fed. Cir. 2013) (internal quotation marks and citation omitted). The PTAB is not limited to "recit[ing] and agree[ing] with the examiner's rejection in haec verba "; indeed, it may "further explain[ ] the examiner's rejection" and thoroughly "respond[ ] to an applicant's argument." Id. (internal quotation marks and citation omitted). However, if the PTAB "finds facts not found by the examiner regarding the differences between the prior art and the claimed invention, and these facts are the principal evidence upon which the [PTAB]'s rejection was based," then the PTAB improperly enters a new ground of rejection. In re Leithem , 661 F.3d 1316, 1320 (Fed. Cir. 2011) (citation omitted).
B. The PTAB Did Not Rely on a New Ground of Rejection
Knowles argues that the PTAB erred in affirming the Examiner's determination that claims 21-23 and 25-26 would have been obvious over U.S. Patent No. 6,594,369 ("Une") in view of U.S. Patent No. 6,327,604 ("Halteren"). See Appellant's Br. 74-80. Specifically, Knowles contends that the PTAB's finding regarding the motivation to combine Une with Halteren "does not appear anywhere in the Examiner's decision," such that "[t]he Examiner never compared Halteren's and Une's modes of operations in his obviousness determination." Id. at 77.[8] Knowles therefore contends the PTAB has relied upon a new ground of rejection because "the [PTAB]'s new modes-of-operation rationale" set forth on appeal "was not previously raised to the applicant by the Examiner." Reply Br. 30 (capitalization modified); Appellant's Br. 77-78 (internal quotation marks and citation omitted).
Having reviewed the record below, we hold that the PTAB did not rely upon a new ground of rejection in its motivation to combine analysis. When rejecting the claims, the Examiner stated, in relevant part, that: "Une does not disclose that the condenser microphone is a silicon condenser microphone. However, Halteren ... shows a package including a silicon condenser microphone...." J.A. 69-70 (citing Halteren col. 5 ll. 10-13). The Examiner went on to state that "[i]t would have been obvious to [a PHOSITA] at the time ... the invention was made to use the silicon condenser microphone of Halteren in Une's invention because the substitution of one known element for another would have yield[ed] predictable results." J.A. 70 (citing KSR Int'l Co. v. Teleflex Inc ., 550 U.S. 398, 416, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) ).
In reaching its decision, the PTAB also relied on the similarities between Une's capacitor microphone and Halteren's silicon condenser microphone. The PTAB found that both types of microphones operate using the movement of a diaphragm with respect to a fixed electrode. See Analog Devices I , 2015 WL 5144183, at *7 (discussing Une as "including diaphragm 4 and fixed electrode 6, and solid state device 8," where sound is measured by this solid state device, which "converts changes in capacity caused by a sound wave vibration into a voltage or current" (citations omitted) ); id. (discussing Halteren's silicon microphone as "send[ing] output signals to [integrated circuit] 62" and finding that, in combination with "solid state device 8 of Une convert[ing] capacitance measured from electret capacitor microphone," "both *1378 Halteren and Une apply similar modes of operation by converting measured vibration into electrical signals"). Therefore, the PTAB found that a PHOSITA would understand it was possible to switch the microphone disclosed in Une for that in Halteren to achieve the claimed invention. See id .
The PTAB's rejection relied on the same reasons provided by the Examiner, albeit using slightly different verbiage. Compare id. ("We agree with the Examiner's determination.... Combining Une and Halteren is no more than the simple substitution of the known silicon microphone 61 of Halteren for the known electret capacitor microphone of Une, to yield predictable results."), with J.A. 70 ("It would have been obvious to [a PHOSITA] to use the silicon condenser microphone of Halteren in Une's invention because the substitution of one known element for another would have yield[e]d predictable results."). Thus, it is not the case that the PTAB "f[ound] facts not found by the [E]xaminer regarding the differences between the prior art and the claimed invention," In re Leithem , 661 F.3d at 1320 (citation omitted), and, as such, the PTAB's decision does not contain a new ground of rejection.
Moreover, Knowles had a fair opportunity to respond to this rejection, which is the "ultimate criterion" for finding no new ground of rejection. Id. at 1319 (internal quotation marks and citation omitted). Knowles responded in its appeal to the PTAB that the Examiner's rejection based on "substitution with predictable results" was incorrect because, inter alia, the capacitor microphone of Une would not be understood by a PHOSITA as a substitute for Halteren's condenser microphone. See J.A. 2793. Knowles's response demonstrates that it had sufficient notice of this particular rejection and took advantage of its opportunity to respond. See In re Adler , 723 F.3d 1322, 1328 (Fed. Cir. 2013) (finding no new ground of rejection "[b]ecause [appellant] had the opportunity to respond, and in fact did respond, to the thrust of the examiner's basis for rejecting the claims").[9]
CONCLUSION
We have considered Knowles's remaining arguments and find them unpersuasive. Accordingly, the Final Written Decision of the U.S. Patent and Trademark Office's Patent Trial and Appeal Board is
AFFIRMED

Third-party requester Analog Devices, Inc. declined to defend the judgment in its favor. See Letter from Appellee Analog Devices, Inc. 1, ECF No. 2. Pursuant to 35 U.S.C. § 143 (2012), the Director of the USPTO intervened and participated at oral argument. See Notice of Intervention 1, ECF No. 11.

We have an independent obligation to satisfy ourselves that we have jurisdiction. Bender v. WilliamsportArea Sch. Dist ., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). The Dissent questions whether the USPTO has Article III standing to "continue the litigation," let alone participate, "when it has asserted no injury to itself." Dissent at 1378-79. There is no dispute Knowles has standing since its patent has been judged unpatentable and therefore it has presented "a justiciable case or controversy." ASARCO Inc. v. Kadish, 490 U.S. 605, 618, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). The Director of the USPTO has an unconditional statutory "right to intervene in an appeal from a [PTAB] decision." 35 U.S.C. § 143 ; see Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 7(e), 125 Stat. 284, 315 (2011) (stating that the Director's right to intervene "shall be deemed to extend to inter partes reexaminations that are requested under section 311 of such title before the effective date" of the America Invents Act). Our precedent allows the USPTO to intervene to defend a PTAB decision when a petitioner withdraws on appeal, necessarily implying jurisdiction. See, e.g., NFC Tech., LLC v. Matal , 871 F.3d 1367, 1371 (Fed. Cir. 2017) ; In re NuVasive, Inc. , 842 F.3d 1376, 1379 n.1 (Fed. Cir. 2016) ; In re Cuozzo Speed Techs., LLC , 793 F.3d 1268, 1272 (Fed. Cir. 2015), aff'd sub nom ., Cuozzo Speed Techs., LLC v. Lee, --- U.S. ----, 136 S.Ct. 2131, 2143-44, 195 L.Ed.2d 423 (2016). We follow the Supreme Court guidance in Cuozzo that "the [USPTO] may intervene in a later Judicial proceeding to defend its decision-even if the private challengers drop out."136 S.Ct. at 2144 ; cf . Pers. Audio, LLC v. Elec. Frontier Found. , 867 F.3d 1246, 1249 (Fed. Cir. 2017) (reaffirming that "[w]ith Article III satisfied as to the appellant, [the appellee] is not constitutionally excluded from appearing in court to defend the PTAB decision in its favor"). The Director of the USPTO, thus, has standing.

Knowles also avers that the PTAB erred in finding certain claims of the '049 patent anticipated by a prior art reference. See Appellant's Br. 74. Because Knowles's anticipation argument is conditioned upon its claim construction argument, see id. , which we find unpersuasive, we need not separately address it, see GrafTech Int'l Holdings, Inc. v. Laird Techs. Inc. , 652 Fed.Appx. 973, 983 (Fed. Cir. 2016) ("Because we conclude that the PTAB did not err in its construction of [the disputed limitation], we need not address [the appellant]'s conditional arguments as to the PTAB's [unpatentability] determinations." (footnote omitted) ).

A patent's prosecution history "consists of the complete record of the proceedings before the [US]PTO," and "provides evidence of how the [US]PTO and the inventor understood the patent." Phillips v. AWH Corp. , 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) (citations omitted).

The term "package" appears in the preamble of the claims. See '049 patent col. 12 l. 16 (claim 1), col. 13 l. 35 (claim 21). A preamble is limiting when it "recit[es] additional structure or steps underscored as important by the specification." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc. , 289 F.3d 801, 808 (Fed. Cir. 2002) (citations omitted). The parties do not contest that the term limits the claims. See generally Appellant's Br.; Intervenor's Br.

Although Knowles uses the term "mounting mechanism" on appeal, it argued for only connections using through-hole or surface mounts below to connect to an external printed circuit board. See Analog Devices I , 2015 WL 5144183, at *5. Knowles now concedes that "package" does not require connection to an external printed circuit board. See Reply Br. 9 ("[Th[e] issue [of whether a 'package' requires a connection to a printed circuit board] was never disputed before the [PTAB]."); Oral Arg. at 5:05-18, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1954.mp3 (Q: "Neither construction required that the package be connected to a printed circuit board?" A: "[W]e've not taken the position that a printed circuit board ... is required."). We thus interpret Knowles's proposed claim construction to mean mounting to any second-level connection (circuit board or otherwise) by use of the through-hole or surface mount techniques.

Knowles's argument that the PTAB did not address MEMS Technology until its rehearing decision, see Appellant's Br. 64, does not change this result. Power Integrations did not require the PTAB to evaluate prior constructions at any particular stage of review. See 797 F.3d 1318.

Knowles does not dispute the findings made by the PTAB that Une and Halteren together teach all of the claimed steps. See Appellant's Br. 56-74.

Knowles argues that the PTAB erred in denying its request for rehearing because the PTAB improperly deemed Knowles to have waived its arguments related to differences between electret microphones and MEMS microphones due to Knowles's failure to raise them before the PTAB. See Appellant's Br. 79-80; see also Analog Devices II , 2016 WL 675856, at *5. The PTAB did not err in finding these arguments waived. See In re Watts, 354 F.3d 1362, 1367 (Fed. Cir. 2004) ("[O]ur review of the [PTAB]'s decision is confined to the 'four corners' of that record [below].... [I]t is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the [PTAB]." (citation omitted) ).